IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| REEDHYCALOG UK, LTD, et al. § | |
| § | |
| Plaintiff § | |
| § | |
| vs. § | CASE NO. 6:07 CV 251 |
| § | PATENT CASE |
| UNITED DIAMOND DRILLING § | |
| SERVICES, INC., et al. § | |
| § | |
| Defendant § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant United Diamond, L.P.'s ("UDLP") Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction (Docket No. 181). For the reasons discussed below, the motion is **DENIED**.

### BACKGROUND

On June 4, 2007, Plaintiffs ReedHycalog UK, Ltd., ReedHycalog, LP, and Grant Prideco, Inc. ("Plaintiffs") filed this action for infringement of several claims from a dozen U.S. Patents relating to leached polycrystalline diamond cutters. The action was initially filed against United Diamond Drilling Services, Inc. ("UDDS"), Varel International Ind. L.P., and Ulterra Drilling Technologies, L.P ("Ulterra").

Defendant Ulterra formed United Diamond, L.P. ("UDLP") on November 15, 2007 as a Canadian limited partnership between United Diamond GP, Ltd. and Ulterra Canada ULC. Defendant Ulterra is the sole shareholder of Ulterra Canada ULC, and Ulterra Canada ULC is the sole shareholder of United Diamond GP, Ltd. Shortly after UDLP was created, Defendants Ulterra and UDLP entered into an Asset Purchase Agreement with other "United Diamond" entities, under

which Defendants Ulterra and UDLP were to acquire the operating assets of the identified Sellers (including Defendant UDDS). It is uncontroverted that Ulterra created UDLP so that it could transfer the assets that it intended to imminently purchase from a variety of pre-existing and separately owned "United Diamond" entities. Accordingly, pursuant to the Asset Purchase Agreement, UDLP and Ulterra acquired the predecessor "United Diamond" entities' existing assets, real property, leases, and intellectual property.

On January 20, 2009, the Court issued an order permitting Plaintiffs to add UDLP to this matter. Plaintiffs Fourth Amended Complaint was filed on January 22, 2009. Plaintiffs contend that UDLP has manufactured, sold, leased, offered for sale or leased infringing fixed cutter drill bits in the United States. UDLP filed this Motion to Dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure claiming that the Court does not have personal jurisdiction over UDLP because UDLP does not have sufficient minimum contacts with the State of Texas. Plaintiffs argue that UDLP has sufficient minimum contacts with the State of Texas in that UDLP, and its predecessor entities, have committed acts of infringement, conducted business, maintained places of business, and owned assets in the State of Texas.

## APPLICABLE LAW

Because personal jurisdiction intimately relates to patent law, Federal Circuit law governs the issue. *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003). If the parties have not conducted jurisdictional discovery, a plaintiff only needs to make a prima facie showing that the defendant is subject to personal jurisdiction, and the pleadings and affidavits are to be construed in the light most favorable to the plaintiff. *Id.* Further, the Court will accept as true the party seeking jurisdiction's uncontroverted allegations, "and resolve in its favor, all conflicts between the facts contained in the parties' affidavits and other documentation." *Alpine View Co. v.*

*Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000).[1]  A court can exercise personal jurisdiction over an out-of-state defendant if the forum state's long-arm statute permits jurisdiction without violating federal due process as delineated in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). *LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1371 (Fed. Cir. 2000); *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1376-77 (Fed. Cir. 1998).

"The Texas long-arm statute reaches 'as far as the federal constitutional requirements of due process will allow.'" *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002) (quoting *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991)).  Thus, the analysis of Texas's long-arm statute collapses into the federal due-process inquiry.  Due process requires that an out-of-state defendant have minimum contacts with the forum such that maintaining the suit does not offend traditional notions of fair play and substantial justice. *Int'l Shoe*, 326 U.S. at 316.

Rule 12(b)(2) allows a court to dismiss a case where the court does not have personal jurisdiction over the defendant. FED. R. CIV. P. 12(b)(2).  Once a movant challenges a court's jurisdiction over him, the party asserting jurisdiction bears the burden to show the movant has minimum contacts with the forum state to support jurisdiction over the movant. *Pieczenik v. Dyax Corp.*, 265 F.3d 1329, 1334 (Fed. Cir. 2001).  If the party asserting jurisdiction makes such a showing, the movant bears the burden to prove the exercise of jurisdiction would be constitutionally unreasonable. *Akro Corp. v. Luker*, 45 F.3d 1541, 1546 (Fed. Cir. 1995).

---

[1] The Court is unaware of a Federal Circuit case expressly addressing how a district court should proceed when the factual allegations of the party seeking jurisdiction are controverted.  However, the Federal Circuit has held that with regard to procedural matters that are not unique to patent issues, courts shall apply the law of the particular regional circuit court where appeals from the district court would normally lie. *See Lab. Corp. of Am. Holdings v. Chiron Corp.*, 384 F.3d 1326, 1330 (Fed. Cir. 2004).  Accordingly, the Court will apply the rule of the Fifth Circuit.

3

**ANALYSIS**

<u>Minimum Contacts</u>

*General Jurisdiction*

The minimum contacts requirement may be met by showing either "general" or "specific" jurisdiction over a defendant. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). A court may exercise general jurisdiction over a defendant when the defendant has contacts with the forum state that qualify as "continuous and systematic." *Campbell Pet Co. v. Miale*, 542 F.3d 879, 883 (Fed. Cir. 2008).

In support of its motion to dismiss, UDLP alleges that the Court lacks general jurisdiction over UDLP because it has never before had a place of business or a principal place of business in Texas, owned assets in Texas, been registered to do business in Texas, conducted any business in the State of Texas, or been in a court in the United States, much less Texas. UDLP further alleges that it has not manufactured, sold, leased, or offered for sale in the United States the drill bits at issue in this lawsuit. However, in UDDS's response to Plaintiffs' interrogatory number 2, UDDS stated that UDLP manufactures, develops, and leases to UDDS the drill bits used by UDDS. Defendant UDDS admitted in its original Answer that it had a sales office in Houston, Texas, and thus Plaintiffs argue that this interrogatory response explicitly identifies UDLP as the entity responsible for manufacturing and leasing the infringing drill bits used by UDDS within the United States, including within the State of Texas. Plaintiffs also allege that UDLP sells accused fixed cutter drill bits to Ulterra, which are delivered to Ulterra's facilities in Fort Worth, Texas on a weekly basis, and that Ulterra also sells or leases UDLP manufactured drill bits to third-party customers in the United States from its several offices in Texas, including one headquartered here in Tyler, Texas. UDLP has failed to controvert the factual allegations that it purposely directed its drill bit products, which

have been accused of infringement in this lawsuit, to the State of Texas and thus, the uncontroverted allegations must be accepted as true in determining jurisdiction.

In response to UDLP's motion to dismiss, Plaintiffs further allege that UDLP has continuous and systematic contacts with the State of Texas because UDLP's directors ultimately control and direct the sales and marketing of UDLP drilling products, including UDLP's infringing drill bits, throughout the United States and the State of Texas right from Ulterra's offices in Fort Worth, Texas. UDLP contends that merely having officers of a foreign registered company located in the forum state is not sufficient in and of itself to warrant forum-related contacts in Texas. *Smith v. Lloyd's of London*, 568 F.2d 1115, 1118 (5th Cir. 1978). While this may be correct, Plaintiffs correctly assert that when general jurisdiction is established by serving an authorized representative of a foreign corporation who is "physically present in the forum and . . . engaged in activities appropriate to accepting service," "there can be no unfairness in subjecting [the] corporation to the jurisdiction of the courts of that state through such service of process upon that representative." *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 444, 72 S. Ct. 413 (1952). Accordingly, the Court may exercise general jurisdiction over UDLP.

*Specific Jurisdiction*

In the absence of general jurisdiction, a court may nonetheless exercise specific jurisdiction over a defendant where the cause of action "arises out of" or "relates to" the defendant's in-state activity. *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1360-61 (Fed. Cir. 2006). This analysis requires courts to inquire "(1) whether the defendant has purposefully directed his activities at residents of the forum; and (2) whether the litigation results from alleged injuries that arise out of or relate to those activities." *Campbell*, 542 F.3d at 884.

In support of its motion to dismiss, UDLP asserts that the Court lacks specific jurisdiction

over UDLP because UDLP does not purposefully direct its activities towards the State of Texas and because Plaintiffs' causes of action do not arise out of or result from UDLP's contacts with the State of Texas. Further, UDLP alleges that the essence of Plaintiffs' claims is that UDDS infringes in Texas, not that UDLP conducts activities in Texas. In response, Plaintiffs allege that UDLP and its predecessor entities have each purposely directed their activities at the State of Texas and have purposely availed themselves of conducting business in the State of Texas by marketing and selling fixed cutter drill bits to and from the State of Texas. Specifically, Plaintiffs assert that Defendant Ulterra serves as UDLP's agent in marketing and selling UDLP's infringing drill bit products. In its motion to dismiss, UDLP addresses the agency issue only once by simply asserting that it has no agents within the State of Texas. Because the Court must resolve all conflicts between the facts in Plaintiff's favor, Plaintiff's argument prevails. Accordingly, because "[a]ctions by an agent . . . can be used to establish jurisdiction over the principal," the Court may exercise specific jurisdiction over UDLP. *O'Quinn v. World Indus. Constructors, Inc.,* 874 F. Supp. 143, 145 (E.D. Tex. 1995).

Considering that the Court must accept all Plaintiff's uncontested allegations as true, Plaintiffs have met their burden of presenting a prima facie case of both general and specific personal jurisdiction over UDLP.

Traditional Notions of Fair Play and Substantial Justice

When minimum contacts are satisfied, the court must then determine whether its assertion of jurisdiction would "comport with fair play and substantial justice." *Campbell*, 542 F.3d at 885. This factor should be applied "sparingly" and only if the defendant has presented a compelling case that the presence of some other considerations would render jurisdiction unreasonable. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). Determining whether the exercise of jurisdiction is reasonable involves balancing (1) the burden on the defendant; (2) the forum state's

6

interest in resolving the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 113 (1987); *Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 429 (Fed. Cir. 1996).

Applying the *Viam* factors, particularly the first three factors, to the facts in this case does not suggest that exercising jurisdiction over UDLP would offend traditional notions of fair play and substantial justice. UDLP agues that it would be unfairly burdened by having to litigate this action because it has absolutely no connection with the State of Texas. However, Plaintiffs' uncontroverted assertions clearly establish that UDLP has at least some connection to the State of Texas. Further, UDLP does not provide evidence that it would be substantially burdened by having to defend this case in Texas. It is well recognized that modern communication and transportation have made defending a lawsuit in a foreign tribunal less burdensome. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294 (1980).

In addition, the State of Texas has a significant interest in preventing patent infringement within its borders and in protecting the patent rights of its citizens. Texas also has an interest in furthering commerce and scientific development, especially within its technology sector, which is promoted by patent laws. Moreover, UDLP contends that Plaintiffs do not suggest they would not have an adequate remedy as against Defendants UDDS and Ulterra alone. However, Plaintiffs assert that this is untrue. In fact, Plaintiffs suspect that Defendants have failed to produce sales, lease, and revenue information for all of the infringing UDLP drill bits that have been used in the United States. Plaintiffs argue that properly maintaining UDLP in this lawsuit will subject UDLP to any injunctive relief that may be awarded to Plaintiffs and assist Plaintiffs in "unravel[ing] the shell game that

7

Defendants have forced [Plaintiffs] to play."

The burden UDLP would suffer by having to defend this case in the State of Texas is clearly outweighed by the State of Texas's interest in resolving the dispute and the Plaintiffs' interest in obtaining convenient and effective relief. Accordingly, the Court's exercise of personal jurisdiction over UDLP does not offend traditional notions of fair play and substantial justice.

## CONCLUSION

Considering the uncontroverted facts as true and resolving the controverted facts in favor of Plaintiffs, UDLP has sufficient minimum contacts with the State of Texas to justify subjecting it to personal jurisdiction in the State of Texas. Furthermore, exercising personal jurisdiction over UDLP in the State of Texas does not offend traditional notions of fair play and substantial justice. Plaintiffs have made the requisite prima facie showing that UDLP is subject to personal jurisdiction in the State of Texas. Accordingly, the Court **DENIES** UDLP's motion to dismiss.

**So ORDERED and SIGNED this 31st day of August, 2009.**

_____
**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**